**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL T.,

            Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

Case No. 22 C 2883

Magistrate Judge Sunil R. Harjani

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael T.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Michael requests reversal and remand [15], and the Acting Commissioner moves for summary judgment affirming the decision [17][18]. For the reasons discussed below, the Court affirms the ALJ's decision.

**Background**

Michael, currently 59 years old, filed an SSI application on October 11, 2019, alleging an onset date of December 31, 2018. R. 13. Michael later amended the onset date to October 11, 2019. *Id.* at 41, 232. Michael alleged disability due to chronic obstructive pulmonary disorder ("COPD"), depression, bipolar disorder, osteomyelitis, syncope, hypothyroidism, and substance abuse disorder. *Id.* at 15-16, 244; Doc. [15] at 1. Treatment included therapy and various prescription medications. R. 18-25. Michael completed one year of college in 1999 and previously worked as a laborer. *Id.* at 245.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

Michael's claims were initially denied on April 1, 2020, and upon reconsideration on April 27, 2021. *Id.* at 13.  Upon written request, on October 8, 2021, the ALJ held a telephonic hearing, attended by Michael, counsel, and vocational expert ("VE") Kari Seaver. *Id.* at 34.  On November 5, 2021, the ALJ found Michael not disabled. *Id.* at 13-28.  The opinion followed the required five-step process. 20 C.F.R. § 404.1520.  The ALJ found Michael had the following severe impairments: COPD, depression, bipolar disorder, and substance abuse disorder, as well as non-severe impairments of hyperlipidemia, osteomyelitis[2] of the right second toe, hypothyroidism, right radial nerve palsy, and obesity. *Id.* at 15-16.  The ALJ also noted Michael at times limped or had gait issues, for which he was prescribed a cane, and syncopal[3] episodes. *Id.* at 18-25.  However, as outlined in the ALJ's opinion, the gait issues and fainting episodes were not consistent with the medical evidence. *Id.* at 16, 18-25.  The ALJ also found that Michael was treated for his bone infection and radial nerve palsy, and his hyperlipidemia and hypothyroidism were stable with medication. *Id.*  Further, the ALJ expressed that the record does not reflect Michael had severe obesity or restrictions associated with obesity. *Id.* at 15.  The ALJ concluded Michael did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 16-18.  The ALJ specifically considered listings 3.02, 12.04, 12.06, and 12.08. *Id.* at 16.  For Listing 3.02, the ALJ found no evidence that Michael's chronic respiratory disorder met the listing, with no chronic impairment of gas exchange, no significantly abnormal arterial blood gas values, or exacerbations and

---

[2]   Osteomyelitis is an inflammatory infection of the bone. *See Osteomyelitis*, Merriam-Webster, https://www.merriam-webster.com/dictionary/osteomyelitis (last visited Nov. 2, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 638160, Westlaw (database updated November 2014).

[3]   Syncope is a loss of consciousness. *See Syncopal*, Merriam-Webster, https://www.merriam-webster.com/dictionary/syncopal (last visited Nov. 2, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 875540, Westlaw (database updated November 2014).

complications requiring three hospitalizations within a 12-month period at least 30 days apart lasting for at least 48 hours. *Id.* Under the "Paragraph B" analysis, the ALJ found Michael had moderate limitations in interacting with others, and concentrating, persisting or maintaining pace. *Id.* at 17. The ALJ found mild limitations in understanding, remembering, or applying information, and adapting or managing oneself. *Id.* at 17-18.

The ALJ then determined Michael had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations as follows: (1) can perform simple, routine tasks; (2) can make simple work-related decisions; (3) can occasionally tolerate changes in the workplace; (4) can occasionally interact with supervisors, coworkers, and incidental interaction with the public; and (5) should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 18-27. After posing hypotheticals to the VE, the ALJ concluded Michael could perform medium exertional level jobs, including hand packager, assembler, and inspector. *Id.* at 27-28, 57-59. As a result, the ALJ found Michael not disabled. *Id.* at 28. The Appeals Council denied Michael's request for review. *Id.* at 1-3.

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform their former occupation; and (5) whether the claimant is unable to perform any other available work in light of their age, education,

and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of his request for reversal and remand, Michael argues the ALJ: (1) erred in finding the medical source opinion from physician, Dr. Rana, unpersuasive; (2) failed to properly construct an RFC by rejecting Michael's need for a cane and shortness of breath upon exertion and finding him capable of medium work; and (3) erred in finding Michael's subjective symptoms were inconsistent with the totality of the evidence. Having considered these arguments and the record, the Court finds the ALJ did not commit reversible error as the ALJ's decision is supported by substantial evidence.

4

## I.    Treating Physician Opinion

Michael first challenges the ALJ's decision to reject the opinion of Dr. Fauzia Rana, M.D. In summary, Michael claims: (1) there was ample evidence consistent with Dr. Rana's findings; and (2) the ALJ failed to properly evaluate Dr. Rana's opinion dismissing it as "vague" and "not stated in vocationally relevant terms." Doc. [15] at 2-7; Doc. [19] at 1-4.  The Court disagrees.

On February 10, 2020, Dr. Rana met with Michael for a consultative exam. R. 602.  Dr. Rana first obtained a medical history from Michael where he stated that he suffered from breathing problems, fainting spells, and depression. *Id.*  Dr. Rana went through Michael's systemic review, past medical history, work and education history, family history, activities of daily living, social history, current medications, allergies, military service, legal problems, general characteristics, a physical and mental examination, and then gave her diagnostic impressions with a medical source statement. *Id.* at 602-05.  Notably, Dr. Rana found:

- **Social History:** Claimant smokes half to one pack of cigarettes a day; (*Id.* at 603)

- **General Characteristics:**  The claimant has no difficulty in breathing and no difficulty in various movements; (*Id.*)

- **Chest:**  Breath sounds are decreased.  No rales,[4] rhonchi,[5] or wheezing.  Vent studies were not done today.  Claimant was on Prednisone[6] four months ago; (*Id.* at 604)

---

[4]   A rale is an abnormal sound heard when examining lungs. *See Rale*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rale (last visited Nov. 2, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 750960, Westlaw (database updated November 2014).

[5]  Rhonchi is continuous sounds heard when breathing when air channels are partly obstructed. *See Rhonchi*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rhonchi (last visited Nov. 2, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 783490, Westlaw (database updated November 2014).

[6]  Prednisone is a synthetic drug used to relieve rheumatic and allergic conditions associated with inflammation. *See Prednisone*, Merriam-Webster, https://www.merriam-webster.com/dictionary/prednisone (last visited Nov. 2, 2023); *see also* STEDMANS MEDICAL DICTIONARY § 717600, Westlaw (database updated November 2014).

- **Degrees of Difficulty in Performance:** No difficulty in getting on/off the exam table, tandem walking, walking on toes, walking on heels, squatting and arising, hopping on one leg, and no need/use of assistive device; (*Id.* at 604)

- **Gait:** Claimant has a normal gait without any ambulatory aid. He can walk more than 50 feet without assistance; (*Id.* at 605)

- **Diagnostic Impressions:** (1) Chronic obstructive lung disease. On auscultation today, breath sounds are decreased. No rales, rhonchi, or wheezing; (2) Hypothyroidism; (3) History of blackouts/syncope; (4) Depression with drug abuse in the past as per history. Claimant is on Methadone at present; (*Id.*)

In conclusion, Dr. Rana wrote a medical source statement outlining that "[t]he claimant is able to sit, stand, speak and hear without difficulty. He has some difficulty in prolonged walking, lifting and carrying due to shortness of breath and easy fatigue. He does not use an ambulatory aid today and can walk more than 50 feet without assistance." *Id.*

For his first contention, Michael argues the ALJ discounted crucial evidence in dismissing Dr. Rana's opinion. In support, Michael alleges the record corroborates Dr. Rana's opinion because: (1) Michael's shortness of breath interfered with his ability to walk for prolonged periods of time; (Doc. [15] at 3-5) and (2) Michael suffered from a bone infection to his right toe causing him to use a cane and to have difficulty walking (Doc. [15] at 5-6). Michael advances these arguments by citing to various parts of the record. Doc. [15] at 3-6.

The ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. *See* 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how they considered the factors of supportability

6

and consistency in their decision, they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2). Additionally, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023). Instead, an ALJ must minimally articulate their reasoning. *Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'").

First, Michael argues there was ample record evidence consistent with Dr. Rana's opinion that Michael's shortness of breath interfered with his ability to walk, lift and carry for prolonged periods of time. Doc. [15] at 3-5. An ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record. *Hernandez v. Astrue*, 277 F. App'x 617, 622-23 (7th Cir. 2008) (discrediting physician's opinion as substantial record evidence did not support severe COPD limitations); *Hunter v. Barnhart*, 56 F. App'x 262, 265-66 (7th Cir. 2003) (ALJ reasonably rejected treating physician's opinion because while COPD diagnosis was supported by the record, sedentary work restrictions were not). It is not for this Court to reweigh the evidence the ALJ considered, but to ask whether the ALJ's decision exhibited a "logical bridge from the evidence to the conclusions." *Reynolds*, 25 F.4th at 473. Here, the ALJ minimally articulated their reasoning for finding Dr. Rana's opinion regarding Michael's shortness of breath unpersuasive by identifying substantial contradictory evidence in Dr. Rana's own report and the

longitudinal evidence. *See* R. 19-25.  Foremost, the ALJ reviewed Michael's visit with Dr. Rana. *Id.* at 21-22 (*citing* 600-10).  The ALJ observed that Michael reported breathing problems to Dr. Rana, worsening with weather change and on exertion. *Id.* at 21.  The ALJ reviewed Dr. Rana's examination notes, considering that Michael smoked a half pack of cigarettes a day and exhibited decreased breath sounds. *Id.* at 22.  However, as the ALJ remarked, during Michael's physical evaluation with Dr. Rana, he had no rales, rhonchi, or wheezing. *Id.*  Further, the ALJ reviewed the record as it related to Michael's breathing issues.  The ALJ considered Michael's testimony that his shortness of breath or breathing issues are triggered by walking, that he can only walk one block, stand for ten to fifteen minutes, and that he uses Symbicort and Albuterol twice daily to combat breathing issues. R. 19.  The ALJ contrasted Michael's testimony with the longitudinal medical record where Michael had numerous instances of normal respiratory examinations. *See id.* at 20 (*citing* 474-87) (normal respiration during visit for COPD medication refill); *id.* at 21-23 (*citing* 625-29, 757-65) (clear breathing no rales, rhonchi, or wheezes); *id.* at 23 (*citing* 839-45) (same with good oxygen levels); *id.* at 23 (*citing* 831-38, 2182) (COPD stable); *id.* at 24 (*citing* 820-30) (normal respiratory examination).  Simultaneously, the ALJ grappled with occurrences in the longitudinal record where Michael exhibited some breathing difficulties. *See id.* at 20-21 (*citing* 330-44) (receiving nebulizer treatment, steroid burst and Azithromycin for COPD); *id.* at 22 (*citing* 744-49) (assessed with COPD, good oxygen saturation, but advised to stop smoking and continue inhalers).  After reviewing the totality of the evidence, the ALJ concluded Michael was not limited to the amount he alleged. *Id.* at 24.  The ALJ explained that the evidence exhibited Michael's "COPD was stable with medication management" and "[h]is respiratory examinations were consistently unremarkable showing [Michael] with clear auscultation without rales, rhonchi, or wheezes." *Id.* at 24-25.

Michael's argument heavily relies on the incorrect notion that the ALJ failed to consider consultative examination and breathing test with Connie Chappel, M.D. Doc. [15] at 3-4; Doc. [19] at 2-3. An ALJ is not required to mention every piece of evidence; rather they cannot ignore an entire line of evidence supporting a finding of disability. *Combs*, 69 F.4th at 435; *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document [they] considered, but must only weigh the relevant evidence."). Here, the ALJ weighed the evidence of the spirometry test[7] in deciding Michael did not meet Listing 3.02. R. 16. Further, the ALJ examined Dr. Chappel's examination findings in their entirety, evaluating and weighing Michael's reports of breathing difficulties upon exertion and with cold weather, dust, and cleaning products, reported use of Albuterol twice a day and a nebulizer twice a week, and decreased breath sounds, with Michael's lack of history of supplemental oxygen or mechanical ventilation, his unlabored breathing, normal respiratory rate, and lack of rales, rhonchi, or wheezes. *Id.* at 23-24 (*citing* 791-813). The ALJ did not ignore an entire line of evidence supporting Michael's breathing problems, but instead detailed the evidence for, and the evidence against when coming to their determination.

This Court finds this case analogous to *Hernandez*. 277 F. App'x 617. In *Hernandez*, Plaintiff suffered from COPD, exhibited by multiple hospital visits, including nineteen sessions of pulmonary rehabilitation, and bouts of respiratory infections. *Id.* at 619-21. The ALJ refused to credit testimony from one of Plaintiff's treating physician's due to contrary evidence that Plaintiff's pulmonary function studies were clear and their COPD was mild. *Id.* at 622-23. The Seventh Circuit upheld the ALJ's denial of disability benefits holding the ALJ properly discounted

---

[7] A spirometry test or pulmonary function test measures the forced expiratory volume (FEV1), the forced vital capacity (FVC) and a ratio of FEV1/FVC. This test is used to diagnose COPD and evaluate the severity. *See What a Spirometry Test Score Can Tell You About Your COPD*, Healthline.com, https://www.healthline.com/health/copd/spirometry-score#tracking-progression (last visited Nov. 2, 2023). Here, Michael had a result of 64% which indicates moderate COPD. *See* R. 811.

the treating physician's opinion as it was contradicted by other substantial evidence in the record. *Id*. The Seventh Circuit explained that the ALJ was entitled to credit other more recent treating physician opinions and give weight to the medical record which consistently found Plaintiff's lungs to be clear and diffusion capacity normal exhibiting mild COPD. *Id*. Likewise, here, the ALJ discounted Dr. Rana's opinion based on the medical records which consistently found Michael to have normal respiratory examinations, no rales, rhonchi, or wheezes, good levels of oxygen saturation and respiratory rates. R. 20-24 (*citing* 474-87, 602-05, 625-29, 744-49, 757-65, 820-30, 839-45). Contrary to Michael's argument, the ALJ weighed the longitudinal record evidence and found substantial evidence did not support Dr. Rana's opinion that Michael would have difficulty with prolonged walking due to shortness of breath.

Second, Michael argues the ALJ wrongfully discredited Dr. Rana's opinion because the evidence supported Michael's chronic bone infection and right toe wound would cause difficulty with prolonged walking, lifting, and carrying. Doc. [15] at 5-7.[8] As noted above, an ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (ALJ reasonably rejected treating physician's opinion which "conflicted with the objective medical evidence."). Here again, the ALJ minimally articulated their reasoning for finding Dr. Rana's opinion regarding Michael's use of a cane and difficulty walking unpersuasive by identifying substantial contradictory evidence in Dr. Rana's own report and the longitudinal evidence. The ALJ reviewed Michael's visit with Dr. Rana and

---

[8] Michael briefly mentions his "right wrist drop due to radial nerve palsy that interfered with activity and caused weakness, including weakened grip" and "degenerative changes affecting the AC joint [] suggest[ing] possible hydroxyapatite deposition in the rotator cuff." Doc. [15] at 5-6. Any argument regarding Michael's wrist drop or rotator cuff is underdeveloped and thus waived. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (perfunctory and underdeveloped arguments are waived). Even so, the arguments are unavailing as Dr. Rana's examination found Michael to have strong 5/5 grip and muscle strength, with no limitations in his shoulders and wrists. R. 604.

observed contradictions. Dr. Rana's medical source statement stated that Michael "has some difficulty in prolonged walking" but also reported that Michael "did not use an ambulatory aid today and can walk more than 50 feet without assistance." R. 21-22 (*citing* 605). The ALJ also observed that Dr. Rana found Michael had a normal range of motion, no difficulty getting on and off the exam table, tandem walking, toe and heel walking, squatting, arising, and hopping on one leg. *Id.* at 21-22 (*citing* 602-05). Next, the ALJ weighed the longitudinal medical record evidence. *Id.* at 19-24. The ALJ examined instances where Michael had a normal gait (*see id.* at 20-21, 23-24 (*citing* 488-505,[9] 597-99, 791-813) (ambulated independently with steady gait)) as well as instances where Michael used a cane (*see id.* at 21-24 (*citing* 625-29, 744-49, 820-45)) or walked with a limp (*see id.* at 20-21 (*citing* 330-44)). The ALJ outlined that after the bone infection of the right second toe, Michael received occupational therapy and, in a follow up visit with podiatry, the toe was noted to be healing well. *See id.* at 15-16 (*citing* 2908-51, 2893, 2895), *id.* at 22 (*citing* 746). Contrarily, the ALJ considered that in an August 11, 2020, acute care follow up Michael complained of continuing pain on right foot second toe. *Id.* at 22 (*citing* 744-49). Based on the holistic review of the record, the ALJ concluded that although Michael was "prescribed a cane, the records reflect that he had [a] normal gait without the use of the cane." *Id.* at 24. Moreover, the ALJ found Michael had unremarkable physical examinations with full range of motion and full strength. *Id.* The ALJ also concluded that the examinations where Michael used his cane did not indicate it was necessary due to his severe impairments or gait deficits. *Id.*

---

[9] The ALJ cited to the record and included general "dup." or duplicative citations. *See* R. 13-28. The Court notes while there are some duplicative visits noted multiple places throughout the record, the records are not exact duplicates but instead include further medical information. In the interest of clarity, the Court cites to where the ALJ found direct support.

Michael relies on Albert DeRubertis', Doctor of Osteopathic Medicine, assessment of his gait dysfunction and reports from Symphony in support of his contention that the evidence was consistent with Dr. Rana's opinion. Doc. [15] at 6. As discussed above, an ALJ need not discuss every piece of evidence. *Combs*, 69 F.4th at 435. Here, the ALJ engaged with the evidence of Michael's chronic bone infection. Specifically, the ALJ discussed Michael's admittance and stay at Symphony following his visit to the University of Chicago Hospital, the occupational therapy and podiatry visits done in follow up, and the fact Michael's toe was healing well. *See* R. 15-16 (*citing* 2908-51, 2893, 2895), *id.* at 22 (*citing* 746). The ALJ reviewed these facts and the use of a cane and limp shown in multiple visits. *See id.* at 21-24 (*citing* 625-29, 744-49, 820-45); *id.* at 20-21 (*citing* 330-44). In contrast, the record evidence, including Dr. Rana's own report, supported a finding that Michael was able to ambulate normally without a cane. *Id.* at 20-24 (*citing* 488-505, 597-99, 604-05, 791-813).

Contrary to Michael's allegations, the Court finds the ALJ discounted the opinion regarding Michael's use of a cane and difficulty walking by identifying substantial contradictory evidence in Dr. Rana's own report and the longitudinal evidence. As the ALJ stated, the longitudinal record fails to indicate Michael required a cane to walk. *See Love v. Kijakazi*, 2023 WL 2664009, at **3-5 (N.D. Ill. Mar. 28, 2023) (holding an ALJ properly weighed conflicting medical evidence regarding Plaintiff's use of a cane in determining the RFC limitations); *Richmond v. Chater*, 94 F.3d 647 (Table), 1996 WL 467653, at *7 n.9 (7th Cir. 1996) (A "personal decision to use a cane does not necessarily mean [Plaintiff] could not walk without one."). Additionally, Dr. Rana's own opinion found Michael had a normal gait without any ambulatory aid, no need for ambulatory aid, and the ability to walk more than 50 feet without assistance. R. 21-22 (*citing* 602-05). The ALJ evaluated Michael's statements, Dr. Rana's opinion, and the

totality of Michael's treatment history, including the supportive and contrary evidence, in properly coming to their determination. The Court finds the ALJ's weighing of the evidence was supported by "more than a mere scintilla." *Biestek*, 139 S.Ct. at 1154.[10]

For his second contention, Michael alleges the ALJ failed to properly evaluate Dr. Rana's opinion. Doc. [15] at 3, 6-7; Doc. [19] at 1-2. An ALJ must explain how they considered factors of supportability and consistency in their evaluation of medical opinion evidence. 20 C.F.R § 404.1520c(b)(2). Regarding consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1).

Michael argues that the ALJ should not have discounted Dr. Rana's opinion as unpersuasive, "vague," and "not stated in vocationally relevant terms," instead considering the "supportability" and "consistency" factors under 20 C.F.R. § 404.1520c(b)(2). Doc. [15] at 3; Doc. [19] at 1-3.[11] The Court finds the ALJ sufficiently articulated that Dr. Rana's opinion was inconsistent and unsupported due to contradictions internally and with the longitudinal record.

---

[10] As the Court does not find there was an error in the ALJ's weighing of Dr. Rana's opinion, it does not address Plaintiff's contention regarding harmless error. Doc. [15] at 6-7; Doc. [19] at 3-4.

[11] Michael cites to this Court's opinions in *Francisco M.-L. v. Kijakazi*, 2022 WL 4551968 (N.D. Ill. Sept. 29, 2022), *Michael S. v. Kijakazi*, 2022 WL 16744195 (N.D. Ill. Nov. 7, 2022), and *Annette S. v. Saul*, 2021 WL 1946342 (N.D. Ill. May 14, 2021) in support. However, these cases are inapposite to the facts here. In *Francisco M.-L.* the medical opinion at issue gave specific limitations stating that the Plaintiff could not perform any task "for more than thirty minutes." 2022 WL 4551968, at *4. This limitation was supported by Plaintiff's physical examination, medical records and the provider's report. *Id.* Unlike in *Francisco M.-L.*, here, the ALJ substantiates the finding that Dr. Rana's opinion was vague. R. 18-27. The ALJ outlines that Dr. Rana's opinion does not give specific limitations (*id.* at 602-05) and is internally inconsistent and inconsistent with the longitudinal medical record. *Id.* at 18-27. Similarly, in *Michael S.* the ALJ failed to ensure a sufficiently complete record to evaluate whether the Plaintiff was disabled, including assessing the

First, the ALJ reviewed the February 10, 2020, visit with Dr. Rana grappling with the contradictory evidence that while Michael reported having difficulty breathing every day, which worsened with weather change and exertion, Dr. Rana's noted no rales, rhonchi, or wheezing. R. 21-22 (*citing* 600-10), 24-25. Additionally, as the ALJ outlined, despite Dr. Rana's medical source statement that Michael had difficulty in prolonged walking, during Michael's physical examination, Dr. Rana noted no such difficulty. *Id.* at 21-22 (*citing* 604-05). Instead, Dr. Rana found no difficulty in getting on/off the exam table, tandem walking, walking on toes, walking on heels, squatting and arising, hopping on one leg, and had a normal gait. *Id.* The ALJ specifically noted that while Dr. Rana's medical source statement declared that Michael "is able to sit, stand, speak and hear without difficulty," "can walk more than 50 feet without assistance" and "does not use an ambulatory aid today," this was directly contrary to the next sentence that Michael has "some difficulty in prolonged walking, lifting and carrying due to shortness of breath and easy fatigue." *Id.* at 21-22 (*citing* 605), 26. The ALJ's conclusion that Dr. Rana's opinion is vague is supported by the record. Further, it is unclear what Dr. Rana means by "prolonged," as she also finds no problems with walking and the ability to walk 50 feet without assistance. *Id.* Moreover, it is ambiguous how this opinion should be considered for Michael's vocational functioning, as

---

treatment notes from the provider treating Plaintiff's mental impairments. 2022 WL 16744195, at *4. Here, there is no insufficiency or incompleteness of the medical evidence. The ALJ considered Dr. Rana's entire medical opinion, which was solely for the purpose of evaluating Michael's disability claim, along with the longitudinal record. R. 18-27. Finally, unlike *Annette S.* where evidence was not weighed in the first instance, the ALJ had access and reviewed all the information, including the longitudinal record, multiple medical opinions, including Dr. Rana's and the state agency consultants' opinions, properly weighing the evidence. 2021 WL 1946342, at **7, 14. This is not a situation where the ALJ cherry-picked or ignored contradicting evidence. The ALJ considered the over thirty appointments with multiple providers in analyzing the medical evidence of Michael's gait and respiratory examinations. R. 18-27.

Dr. Rana does not indicate if Michael required certain exertional limitations and, if so, what they should be. [12]

Next, the ALJ articulated contradictions with Dr. Rana's opinion and the record. The ALJ considered the evidence in the longitudinal record, including the State agency's consultants' opinions, and concluded that Michael was not limited to the extent alleged based on a lack of evidence regarding the disabling nature of Michael's symptoms. *Id.* at 19-20. In particular, the ALJ outlined over thirty distinct medical visits from October 9, 2019, to August 13, 2021, where Michael at times had unremarkable examinations and exhibited good health contrary to Dr. Rana's opinion. *See id.* at 20-23 (*citing* 474-87, 600-11, 616-24, 636-712, 757-65, 831-45). As detailed above, the ALJ also reviewed the evidence of Michael's respiratory and ambulatory complaints and found substantial evidence contradicted Dr. Rana's opinion. *See id.* 20-24 (*citing* 330-44, 474-505, 597-99, 602-05, 625-29, 744-49, 757-65, 791-813, 820-45). The ALJ also reviewed the State agency's medical consultants' opinion which opined that Michael could perform work at the medium exertional level with frequent climbing and crawling and that Michael should avoid concentrated exposure to fumes, odors, dusts, and poor ventilation. *Id.* at 26 (*citing* 80-94). The ALJ found the environmental limitations favorable and supported by the record, but the postural and exertional limitations unpersuasive and inconsistent with the record evidence. [13] Based on the totality of the evidence the ALJ found that Michael was not limited to the extent alleged, noting

---

[12] Michael argues Dr. Rana's opinion reflected he was at most capable of sedentary or light work. Doc. [15] at 7; Doc. [19] at 3-4. The Court disagrees with this characterization. Nothing in Dr. Rana's opinion limited the amount of time Michael was capable of walking, sitting or standing. R. 602-05. Nor did anything in Dr. Rana's opinion limit the amount Michael could lift. *Id.* Thus, it is unclear from Dr. Rana's opinion what level of work Michael could perform.

[13] The State agency medical consultant's RFC provided Michael could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and climb ramps, stairs, ladders, ropes and scaffold frequently based on Michael's COPD history. R. 88-90.

his unremarkable physical and respiratory examination, and improvement with medication and treatment. *Id.* at 24-25. Contrary to Michael's argument, the ALJ noted the consistency and supportability of Dr. Rana's opinion by assessing it in contrast to itself and the longitudinal record. Thus, the ALJ evaluated Dr. Rana's opinion consistent with 20 C.F.R. § 404.1520c(b)(2). Michael has not demonstrated the ALJ committed reversible error when evaluating or discounting Dr. Rana's opinion.

## II.    RFC Assessment

Michael argues the RFC is not properly constructed because it found him capable of medium work by failing to account for his need for a cane and shortness of breath upon exertion. Doc. [15] at 7-12; Doc. [19] at 4-10. The Court disagrees.

The RFC is the most physical and mental work that Michael can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). In reaching the RFC assessment, the ALJ must "articulate at some minimal level [their] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. An ALJ has the "final responsibility" for determining a claimant's RFC. *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

The ALJ determined Michael had the RFC to perform a full range of work at all exertional levels with non-exertional limitations as follows: (1) can perform simple, routine tasks; (2) can make simple work-related decisions; (3) can occasionally tolerate changes in the workplace; (4)

can occasionally interact with supervisors, coworkers, and incidental interaction with the public; and (5) should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 18-27. This was based off the State agency's consultants' opinions. *Id.* at 80-94; 96-114. State agency consultant, Reynaldo Gotanco, M.D., performed an RFC assessment on March 31, 2020. *Id.* at 80-94. Dr. Gotanco found the following RFC limitations due to Michael's history of COPD: (1) Michael can occasionally lift and/or carry 50 pounds; (2) Michael can frequently lift and/or carry 25 pounds; (3) Michael can sit, stand and/or walk for 6 hours in an 8-hour work day; (4) Michael can frequently climb ramps/stairs, ladders, ropes and scaffolds; and (5) Michael should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 88-90. State agency consultant, Lenore Gonazlez, M.D., was tasked with completing a reconsideration RFC assessment on April 23, 2021. *Id.* at 103-04. Upon reconsideration, Michael alleged worsening of symptoms. *Id.* at 103. However, Michael did not return forms or attend a physical examination. *Id.* at 103. Thus, there was insufficient evidence to address the severity of the impairments alleged and Dr. Gonazlez did not come to any additional medical conclusions. *Id.* At the hearing, after posing hypotheticals to the VE, the ALJ concluded Michael could perform medium exertional level jobs, including hand packager, assembler, and inspector. *Id.* at 27-28, 57-58. As a result, the ALJ found Michael not disabled. *Id.* at 28.

First, Michael asserts the ALJ erred in finding Michael was physically capable of medium work. [14] Doc. [15] at 7-8; Doc. [19] at 4-5. The responsibility for assessing Plaintiff's RFC lays with the ALJ. 20 C.F.R. § 404.1546(b). An ALJ may rely on State agency consultant's RFC findings when they are consistent with the evidence, unless later evidence would have altered the state agency consultant's RFC findings. *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023); *see*

---

[14] Michael is not challenging any of the mental RFC determinations, nor is Michael challenging the opinions of the state agency consultants, including that later evidence would have altered their findings.

*also Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). The Court does "not review medical opinions independently but rather review[s] the ALJ's weighing of those opinions for substantial evidence" and only "overturn[s] that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Here, the ALJ weighed and relied on the State agency consultant's RFC determination in limiting Michael to medium work.

Michael argues he would not be capable of lifting 25 pounds frequently, 50 pounds occasionally and walking for six hours in an eight-hour workday. Doc. [15] at 7-8; Doc. [19] at 4-5. However, the State agency's consultant found that Michael can occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds, sit, stand and/or walk for 6 hours in an 8-hour workday; frequently climb ramps/stairs, ladders, ropes and scaffolds; and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 88-90. The ALJ relied on this determination in crafting their RFC, finding the environment limitations favorable and supported by the record. *Id.* at 26. While the ALJ expressed that the exertional limitations found by the State agency's consultant were unpersuasive and inconsistent with the record evidence, the ALJ concluded Michael could perform medium exertional level jobs, in line with the State agency's medical consultant's exertional limitations. *Id.* at 26 (*citing* 80-94); 20 C.F.R. § 416.967(c) (defining medium work). These exertional limitations were supported by the totality of the medical evidence, including the numerous normal examinations during the two-year period between the alleged onset date and the administrative hearing. R. 18-27. The ALJ reviewed over thirty distinct medical visits with at minimum ten different providers weighing evidence both supporting and contradicting Michael's claims when determining the RFC. *Id.* Contrary to Plaintiff's allegations, the ALJ did not fail to address evidence that undercut their conclusion, but considered evidence about Michael's ability to sit, stand, lift, and walk. *Id.*; Doc. [15] at 8. As a

reasonable mind could accept the ALJ's conclusion that Michael was capable of medium work, the Court does not find grounds for remand. *Grotts*, 27 F.4th at 1278.

Second, Michael asks the Court to reexamine the RFC limitations that the ALJ drafted because they allegedly failed to account for Michael's use of a cane in violation of SSR 96-8p. Doc. [15] at 8-10; Doc. [19] at 4-8. Specifically, Michael argues he would be unable to tolerate the walking/standing requirement of medium work without his cane, that the ALJ failed to analyze contrary evidence,[15] including evidence that Michael was incapable of walking six hours a day five days a week without a cane, and that this error in assessment was not harmless.[16] *Id.* SSR 96-8p requires an ALJ to discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, eight hours a day, for five days a week, or an equivalent work schedule). SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "But [the Court] may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ built an accurate and logical bridge from the evidence to [their] conclusion." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quotation marks omitted); *see also Whitehead v. Saul*, 841 F. App'x 976, 982-83 (7th Cir. 2020) (affirming where the ALJ derived his restrictions from two sources).

---

[15] In Michael's Reply (Doc. [19] at 6) he briefly alleges the ALJ cherry-picked evidence to support his conclusion. An ALJ is not required to mention every piece of evidence; rather they cannot ignore an entire line of evidence supporting a finding of disability. *Combs*, 69 F.4th at 435; *Loveless*, 810 F.3d at 507. Here, as detailed at length above, the ALJ did not ignore an entire line of evidence about Michael's gait, including his reduced mobility, lost function, weakness, pain in right foot, gait dysfunction, deformity in his right great toe, decreased strength in lower extremities, impaired balance, unsteadiness and impaired motor control. Doc. [19] at 6. Instead, the ALJ cited to various medical records exhibiting Michael's issues but also noting improvement and ability to ambulate steadily without a cane. R. 18-27.

[16] As the Court does not find there was an error in the ALJ's weighing of Michael's need for a cane, it does not address Plaintiff's contention regarding harmless error. Doc. [15] at 9-10; Doc. [19] at 6-7.

In crafting the RFC, the ALJ reviewed Michael's medical history regarding his use of a cane. The ALJ stated that Michael's "statements about the intensity, persistence, and limiting effect of his symptoms [] are inconsistent with the evidence." R. 19. The ALJ explained that, while the record reflects Michael was prescribed a cane "at one point, his physical examinations have been mostly unremarkable with the claimant in no acute distress, having full range of motion, normal strength and mostly normal gait." *Id.* at 20; *see Kuykendoll v. Saul*, 801 F. App'x 433, 438-39 (7th Cir. 2020) (affirming RFC that failed to account for use of a cane as treatment record did not show Plaintiff required a cane during physical examinations). The ALJ supports this finding by reviewing the longitudinal record comparing when Michael's gait was problematic with when it was steady without the use of an assistive device. *Compare* R. 19-21 (*citing* 330-44, 625-29, 744-49, 820-45)[17] *with* R. 20-24 (*citing* 488-504, 597-99, 602-05, 791-813). With all of this, the Court can trace the path of the ALJ's reasoning and the ALJ's RFC is supported by more than a mere scintilla of evidence.

Third and finally, Michael argues the ALJ's RFC finding was inconsistent because it assessed him capable of medium work despite evidence of breathing difficulty.[18] Doc. [15] at 10-12; Doc. [19] at 8-10. The crux of Michael's argument is that his breathing troubles were not precipitated by only fumes, odors, dusts, gases and poor ventilation, but by physical exertion. *Id*. As noted, "[the Court] may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ built an accurate and logical bridge from the evidence

---

[17] Michael contends that the "ALJ did not mention, or did not analyze, much of the evidence contrary to his conclusion." Doc. [15] at 9. This is incorrect. The ALJ mentioned numerous findings related to Michael's alleged gait issues and weighed them when coming to his conclusions. R. 19-21 (*citing* 330-44, 625-29, 744-49, 820-45).

[18] Michael again raises the spirometry test conducted by Dr. Chappel and states that the ALJ failed to consider this evidence. As noted above, the ALJ considered the test and found Michael's moderate COPD to be stable with medication management. R. 24-25.

to [their] conclusion." *Jarnutowski*, 48 F.4th at 774 (quotation marks omitted). Here, the ALJ limited Michael's exposure to fumes, odors, dusts, gases, and poor ventilation based on his history of COPD and the State agency's consultant's opinion. R. 20, 26. The ALJ determined that, while Michael was diagnosed with COPD, he had numerous medical visits indicating normal respiratory examinations, no rales, rhonchi, or wheezes, good levels of oxygen saturation and respiratory rates. *Id.* at 20-24 (*citing* 330-44, 474-87, 602-05, 625-29, 744-49, 757-65, 820-45). Overall, Michael's COPD was stable with medication management. *Id.* at 24-25. This indicated that Michael did not require functional limitations in his RFC, even so the ALJ limited Michael to medium work with physical exertion limitations. *Id.* at 18; *Sosh v. Saul*, 818 F. App'x 542, 546-47 (7th Cir. 2020) (affirming RFC and finding substantial evidence COPD caused no functional limitations as Plaintiff often had normal respiratory examinations and COPD was relatively under control). Again, the Court can follow the ALJ's reasoning and the ALJ's RFC is supported by substantial evidence.

### III.    Subjective Symptoms

Michael contends the ALJ's evaluation of his symptoms violated SSR 16-3p and was not supported by substantial evidence. Doc. [15] at 12-15; Doc. [19] at 10-12. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may

not ignore an entire line of evidence contrary to [their] ruling." *Benito M. v. Kijakazi*, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th at 1278). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Michael claims the ALJ did not consider: (1) Michael's daily living; (2) Michael's symptoms because of his "conservative treatment;" and (3) the third-party statements of Michael's brother, John Turner.

First, Michael alleges the ALJ overlooked the fact that he purportedly received significant help and supervision from Symphony staff in his daily activities. Doc. [15] at 12-13; Doc. [19] at 10-11. While Michael points to a limited number of records from Symphony stating he needed "supervision" while using the restroom or eating, other records indicated he could do these tasks independently. *See, e.g.*, R. 1961-65, 1992-06, 2011-13, 2044-25, 2076-85.[19] Further, Michael was not indicated to need "limited assistance, extensive assistance, or total dependence" in performing these tasks and often was noted to have normal breathing. *Id.* While the ALJ noted Michael was in Symphony due to his toe injury, Michael's own function report indicated he had no problems with personal care or hygiene, did not need reminders to take medication, was able to shop, use a phone or computer, pay bills and handle his own finances, prepare basic meals, attend church and play the organ. *Id.* at 16-27 (*citing* 260-71). Michael also used public

---

[19] Other Symphony records were left completely blank. *See* R. 1988-90, 2031-33.

transportation and was able to go places alone. *Id.* at 25 (*citing* 251-71). The ALJ weighed this narrative evidence, with medical reports from the two-year period between alleged disability onset and the administrative hearing, and determined that Michael's statements about the intensity, persistence, and limiting effects of his symptoms were not supported by the longitudinal record. *Id.* at 24-25.

Second, Michael alleges the ALJ wrongfully discounted Michael's symptoms based on his "conservative treatment." Doc. [15] at 13; Doc. [19] at 11-12. This argument is without merit. It is proper for an ALJ to consider treatment and other measures when assessing Michael's symptoms. 20 C.F.R. § 404.1529(c). Additionally, subjective statements of symptoms must be supported by objective evidence. *See* 20 C.F.R. § 404.1529(c)(2); *Grotts*, 27 F.4th at 1278. And "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted*, 923 F.3d at 478. The ALJ spent time laying out Michael's hearing testimony and subjective symptoms regarding his shortness of breath, breathing issues, how walking triggers his shortness of breath, and his daily use of a cane. R. 19. This is juxtaposed with the totality of medical evidence, as detailed at length above, including that Michael regularly had normal respiratory and physical examinations. *Id.* at 16-27. Moreover, Michael's own function report indicated that he used public transport and attended church. *Id.* at 266-67. The ALJ's consideration of Michael's symptoms, including treatment, was not patently wrong. While the ALJ may not have weighed the evidence in the way Michael preferred, this is not a basis for remand. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("Despite [] colorable arguments, we will not reweigh the evidence.").

Third, Michael contends that the ALJ improperly discounted the statements from his brother, John Turner. Doc. [15] at 14-15; Doc. [19] at 12. While an ALJ cannot discount a third-party function report because a family member is not a medical professional, they can when it is

inconsistent with the medical evidence. *See Joseph M. v. Saul*, 2019 WL 6918281, at **14-15 (N.D. Ill. Dec. 19, 2019) (affirming where the ALJ would have found the claimant's sister's report inconsistent with the treatment record "given the ALJ's decision to rely upon medical evidence— namely, the opinions of the non-examining state agency consultants—to assess these abilities."). Mr. Turner reported that Michael "[could] only lift 25 pounds, only walk half [a] block," used a cane and experienced trouble breathing. R. 257-58. The ALJ discounted Mr. Turner's third-party function report for three reasons. First, Michael's brother was not medically trained to make "exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms." *Id.* at 26. Second, Mr. Turner was biased, and his statements would be "colored by affection." *Id.* And third, Mr. Turner's statements were "not fully consistent with the objective medical evidence," as the "records reflect that the claimant has had mostly unremarkable physical and mental status examinations and was engaging in activities that do not support his alleged limitations." *Id.* The ALJ gave multiple reasons for discounting Mr. Turner's third-party function report, the last of which is persuasive and not patently wrong. *See, e.g.*, *Lopez v. Astrue*, 807 F. Supp. 2d 750, 760 (N.D. Ill. 2011) ("The credibility determination need not be flawless...."). Mr. Turner's report regarding Michael's breathing and walking limitations were contradicted by the record evidence and, as a result, not included in the RFC. First, while Mr. Turner reported Michael encountered trouble breathing, the ALJ concluded the record evidence exhibited normal respiration during multiple medical visits. *See* R. 20 (*citing* 474-87, 820-30). The ALJ also observed that Michael displayed good oxygen levels and did not manifest abnormal respiratory sounds such as rales, rhonchi, or wheezes. *See id.* at 21-23 (*citing* 625-29, 757-65, 839-45). Overall, this supported the ALJ's conclusion that Michael's COPD was stable. *See id.* at 23 (*citing* 831-38, 2182). Second, while Mr. Turner mentioned Michael's use of a cane and difficulty

walking, the ALJ found the record evidence refuted these findings. The ALJ recounted numerous occurrences where Michael ambulated independently with a steady gate. *See id.* at 20-21, 23-24 (*citing* 488-505, 597-99, 791-813). As a result, the ALJ determined Michael did not require a cane. *Id.* at 24. Regardless, the ALJ's RFC determination partially accounted for the limitations Mr. Turner raised. Based on the State agency's medical consultant's opinion, the ALJ limited Michael to medium work and informed him to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 16-27. Medium work includes physical limitations that individuals can only occasionally lift and/or carry 50 pounds and can frequently lift and/or carry 25 pounds. 20 C.F.R. § 416.967(c). Even though Mr. Turner's report was contradicted by objective medical evidence, it was partially accounted for in the RFC limitations. Thus, the ALJ's subjective symptom evaluation was not patently wrong.

## CONCLUSION

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [15], the Acting Commissioner's Motion for Summary Judgment [17][18] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: November 3, 2023

Sunil R. Harjani
United States Magistrate Judge

25